Dear State Senator Aldridge,
¶ This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Title 47 O.S. Supp.2006, § 156.1[1] prohibits state employees, other than those for whom exceptions have been created, from using state-owned vehicles for their personal or private use. May a state agency lawfully adopt a policy authorizing a state employee who does not fall within one of the specific statutory exceptions to use a state-owned vehicle to travel to or from the employee's residence and the assigned place of employment or the state motor pool: (1) when the residence is en route to a location to which the employee is required to travel in the course of the employee's employment, or (2) when the employee would otherwise be returning the state vehicle to the agency or the state motor pool outside of normal working hours?
 I. The Purpose of 47 O.S. Supp.2006, § 156.1 (A) is to Prevent State Employees From Using State-Owned Vehicles for Their Personal or Private Use.
¶ Title 47 O.S. Supp.2006, § 156.1 prohibits state employees from using state-owned vehicles for their personal or private use. The pertinent part of the statute provides:
 A. It shall be unlawful for any state official, officer, or employee, except any essential employees approved by the Governor and those officers or employees authorized in subsection B of this section, to ride to or from the employee's place of residence in a state-owned automobile, truck, or pickup, except in the performance of the employee's official duty, or to use or permit the use of any such automobile, truck, ambulance, or pickup for other personal or private purposes. Any person convicted of violating the provisions of this section shall be guilty of a misdemeanor and shall be punished by a fine of not more than One Hundred Dollars ($100.00) or by imprisonment in the county jail for a period not to exceed thirty (30) days, or by both said fine and imprisonment, and in addition thereto, shall be discharged from state employment.
Id. (emphasis added).[2]
¶ Specifically, you ask how 47 O.S. Supp.2006, § 156.1(A) applies to the following four factual scenarios:
 1. A state employee lives in Edmond, Oklahoma and has an assigned place of employment in Oklahoma City, Oklahoma. The employee must travel to Alva, Oklahoma on official state business. The employee will check out a vehicle from the state motor pool in Oklahoma City. At the time the employee returns from Alva, the state motor pool will be closed. May the employee drive the state-owned vehicle to the employee's residence and return it to the motor pool the next work day without violating the statute?
 2. A state employee lives in Edmond, Oklahoma and has a place of employment in Oklahoma City, Oklahoma. The employee must travel to Alva, Oklahoma on official state business. The employee will check out a vehicle from the state motor pool in Oklahoma City. At the time the employee must leave for Alva, the state motor pool will be closed. May the employee pick up the state-owned vehicle the day before, drive it to his residence, travel to Alva for state business, and return the vehicle to the motor pool the next work day without violating the statute?
 3. A state employee lives in Moore, Oklahoma and has an assigned place of employment in Oklahoma City, Oklahoma. The employee must travel to Ardmore, Oklahoma on official state business. The employee will drive a vehicle assigned to the agency. If the employee returns the vehicle to the agency in Oklahoma City and then drives back to Moore, the employee will have worked beyond an eight-hour day. May the employee drive the state-owned vehicle to his residence and return it to the agency the next work day without violating the statute?
 4. A state employee will be picking up a state-owned vehicle from either the state motor pool or the agency during daylight hours but will not be returning until after dark. For the safety of the employee, may the employee drive the state-owned vehicle to his residence and return it to the motor pool or the agency during daylight hours the next work day without violating the statute?
¶ In interpreting Section 156.1, we look to the intent of the Legislature in enacting the statute. Legislative "intent is generally ascertained from a statute's plain language." State ex rel. Okla. StateDep't of Health v. Robertson, 152 P.3d 875, 877-78 (Okla. 2006). A review of the plain language of Section 156.1(A) demonstrates that the intent of the Legislature was to prohibit state employees who do not fall within certain statutory exceptions from using state-owned vehicles for personal or private purposes. There is no per se prohibition against state employees traveling to or from their place of residence in a state-owned vehicle. Section 156.1(A) authorizes use of a state-owned vehicle in the performance of the employee's official duty. Therefore, if the state-owned vehicle is driven to an employee's place of employment in the performance of the employee's official duty, there is no violation.
¶ A review of other statutory provisions reinforces the legislative intent that state-owned vehicles may be driven to or from an employee's place of residence under certain conditions. In 2005, the Legislature enacted a statute which requires each state agency that uses state vehicles to submit to the Fleet Management Division of the Department of Central Services a report containing certain information including, "[t]he state agency policy for use of vehicles by employees for travel to and from the residences of the employees[.]" 74 O.S. Supp.2006, § 80.1(4). The fact that the Legislature has required the adoption of a policy indicates the Legislature's intent that agencies have discretion in authorizing the use of state-owned vehicles for travel to and from the residences of employees in certain situations. Agency heads or their authorized designees have also been given authority, under the State Travel Reimbursement Act, 74 O.S. 2001 Supp.2006, § 500.1 — 500.55, to "approve the use of motor vehicles for official travel within the State of Oklahoma." 74 O.S. 2001, § 500.4 [74-500.4](B). Whether the factual scenarios you present constitute a violation of Section 156.1 depends on an employer's determination of what constitutes performance of the employee's official duty and whether the use of the state-owned vehicle fulfills a public purpose.
 II. A State Agency May Define What is Meant by the Performance of an Employee's "Official Duty."
¶ Section 156.1(A) does not define what is meant by an employee's "official duty." We have been provided some guidance as to what is meant by an employee's "official duty" by the use of the term "scope of employment" in the Oklahoma Governmental Tort Claims Act, 51 O.S. 2001 Supp. 2006, § 151 through 200. "Scope of employment" is defined at Section 152(11) as "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud[.]" 2007 Okla. Sess. Laws ch. 139, § 1(11) (amending 51 O.S. Supp.2006, § 152(9)). Under this definition, an employer may assign certain duties or tasks to an employee as part of the employee's office or employment, including those involving the use of an agency vehicle. Vehicles are tools necessary for the performance of an employee's official duty and an employer may find that travel to or from a state employee's residence in certain situations is part of the scope of the employee's duties.
¶ For purposes of tort liability, the general rule is that an employee going to or coming from work is not considered to be within the scope of employment. Skinner v. Braum's Ice Cream Store, 890 P.2d 922, 924 (Okla. 1995). The Supreme Court has, however, recognized exceptions to the "going and coming" rule. In Braum's, an employer directed the employee to pick up supplies on her way to work. In finding an exception to the "going and coming" rule, the court stated:
 Liability is imposed upon the employer if the employee is rendering a service, either express or implied, to the employer with his/her consent. An exception also exists if the trip involves an incidental benefit to the employer not common to ordinary commuting trips of the work force.
Id. (emphasis added) (footnote omitted). See also Anderson v. FalconDrilling Co., 695 P.2d 521, 524-25 (Okla. 1985) (stating it could be reasonably concluded that an employee required by an employer to car pool was within the scope of employment as the car pooling requirement was of benefit to the employer's operations "in that it facilitated smooth changeovers of drilling shifts").
¶ Similarly, in the context of determining whether workers' compensation benefits are warranted, the Supreme Court recognized that while travel to and from work is generally not within the scope of employment, in certain situations both the employer and the employee derive mutual benefit from the inclusion of travel in the course of employment. Lucas v. Triad Drilling Co., 969 P.2d 363, 365 (Okla. 1998);Christian v. Nicor Drilling Co., 653 P.2d 185, 186 (Okla. 1982).[3]
¶ By analogy, a state employer may determine that use of a state-owned vehicle to travel to an employee's residence is within the scope of employment when the residence is en route to a location to which the employee is required to travel, as it involves a benefit to the employer not common to an ordinary commute to and from work. Returning a state-owned vehicle to the agency or state motor pool during normal working hours rather than after hours also involves a benefit to the employer as it minimizes the safety risks to the employee.
 III. Employers Are to be Guided in Their Determinations of What Constitutes a Proper Use of State-Owned Vehicles by Whether the Use of the State-Owned Vehicle has a Public Purpose.
¶ Employers are to be guided in their determinations of what constitutes a proper use of state-owned vehicles by whether the use of the state-owned vehicle has a public purpose. Expenditure of tax dollars must constitutionally be for a public purpose. See Okla. Const. art. X, § 14(A). "The term `public purpose' is synonymous with government purpose." State ex rel. Lacy v. Jackson, 682 P.2d 218, 220 (Okla. 1983).
¶ 0 The Oklahoma Supreme Court considered the public purpose behind Section 156.1 in Ethics Commission v. Keating, 958 P.2d 1250, 1258
(Okla. 1998). In that case, a controversy arose over the Governor's use of transportation provided by the Department of Public Safety ("DPS") to attend partisan political fundraisers. In discussing Section 156.1(B), the court looked to whether the statute had a public purpose and stated:
 [Section]156.1 indicates that government transportation to a destination (private residence) for a private purpose (to go home at the end of the work-day) does in fact fulfill a public purpose, because the employee responds to emergencies from the residence. The Legislature has indicated in § 156.1 that the public receives a public benefit in having employees timely respond to emergencies related to the performance of their official duties.
Id. at 1258.
¶ 1 "In determining what constitutes a `public purpose' the Court has applied a broad rather than a restrictive definition." In re InitiativePetition No. 319, 682 P.2d 222, 224 (Okla. 1984). In some of the scenarios you present, there is a monetary savings to the agency as staff time is reduced by the employee keeping his or her workday closer to the normal eight-hour work day. Other situations require fewer financial expenditures because a state-owned vehicle is driven a shorter distance. In other situations there is a safety factor involved as the employee is not required to return a state-owned vehicle to a location which might pose a safety hazard after normal working hours. Under the broad interpretation of public purpose, each of the above scenarios fulfills a public purpose and does not violate 47 O.S. Supp.2006, § 156.1.
 IV. Agencies are Required to Adopt Policies Consistent with State Law for use of State-Owned Vehicles for Travel to and from the Residence of State Employees.
¶ 2 The Fleet Management Division was created within the Department of Central Services to provide oversight and advice to state agencies that own, operate and utilize motor vehicles. 2007 Okla. Sess. Laws ch. 169, § 1(A) (amending 74 O.S. Supp.2006, § 78(A)). In 2005, the Legislature enacted a statute which required that prior to October 1, 2005, each state agency that used state vehicles was required to submit to the Fleet Management Division, upon forms developed by the Division, a report that contained certain information, including "[t]he state agency policy for use of vehicles by employees for travel to and from the residences of the employees[.]" 2005 Okla. Sess Laws ch. 393, § 2(4) (current version at 74 O.S. Supp.2006, § 80.1(4)). Thus, state employers are required to adopt policies and procedures to govern the use of state vehicles in the performance of their employees' official duties. Such policies may take into account what constitutes "performance of the employee's official duty" regarding the use of state-owned vehicles. In adopting such policies, a state agency may not adopt rules, regulations or policies which "exceed the scope of its authority and act contrary to the statute which is the source of its authority." Adams v. Prof'lPractices Comm'n, 524 P.2d 932, 934 (Okla. 1974). A state agency is only authorized to exercise the powers granted by statute and may not expand those powers by its own authority. Marley v. Cannon, 618 P.2d 401, 405
(Okla. 1980).
¶ 3 The Fleet Management Division of the Department of Central Services has adopted administrative rules governing the use of state-owned vehicles. Rule OAC 580:35-1-4 provides:
 (a) State vehicle driving conditions. Every driver of a state owned vehicle shall comply with the following conditions:
 (1) A state owned vehicle shall not be used for personal transportation to stores, shopping centers, lakes, parks, golf courses, athletic events, etc.
 (2) A state owned vehicle shall not be used for hauling a trailer other than a trailer that is state owned or that is rented or leased for official business.
 (3) All state traffic rules and regulations shall be observed.
 (4) All city ordinances related to traffic, parking, etc. shall be observed.
 (5) Safe and courteous driving habits shall be used at all times.
 (b) Prohibited drivers and passengers. Persons other than state employees shall not be permitted to drive or ride in state owned vehicles, unless authorized by the using agency and then only on official state business.
 (c) Traffic violations. State-owned vehicles shall not be driven in excess of the speed limit posted by states and municipalities. All traffic violation fines shall be the sole responsibility of the driver involved.
Id. (emphasis added).
¶ 4 In addition to these prohibitions, state agencies are to be guided by the public purpose to be served by the use of state-owned vehicles in implementing policies governing the use of such vehicles.
 ¶ 5 It is, therefore, the official Opinion of the Attorney General that:
 1. The plain language of 47 O. S. Supp.2006, § 156.1 demonstrates that the Legislature's purpose is to prevent state employees from using state-owned vehicles for their personal or private use. A state employee may travel to or from the employee's place of residence in a state-owned vehicle in the performance of the employee's official duty. Id.
 2. Agencies are required to adopt policies consistent with State law for use of state-owned vehicles for travel to and from the residence of the employees. 74 O.S. Supp.2006, § 80.1 (4). Such policies may not be inconsistent with other provisions of state law. Marley v. Cannon, 618 P.2d 401, 405 (Okla. 1980).
 3. A state agency may lawfully assign duties to its employees including the use of an agency vehicle. In assigning duties, a state agency may define an employee's official duty to include travel to or from the employee's place of residence under certain situations which are of benefit to the agency. See generally 2007 Okla. Sess. Laws ch. 139, § 1(11) (amending 51 O.S. Supp.2006, § 152 (9)) (defining "scope of employment" for purposes of the Oklahoma Governmental Tort Claims Act, 51 O.S. 2001 
Supp. 2006, § 151-200).
 4. Employers are to be guided in their determinations of what constitutes a proper use of state-owned vehicles by whether the use of the state-owned vehicle has a public purpose. See Okla. Const. art. X, § 14(A).
 5. A state agency policy that authorizes a state employee to drive a state-owned vehicle to his or her home upon returning from official state business after normal working hours and return the vehicle to the state motor pool the following day does not violate 47 O.S. Supp.2006, § 156.1, when the employee's home is en route from the place of official business to the state motor pool.
 6. A state agency policy that authorizes a state employee to drive a state-owned vehicle to the employee's residence at the end of the work day, when the residence is en route to a location to which the employee is required to travel on official state business the following day, does not violate 47 O.S. Supp.2006, § 156.1.
 7. A state agency policy that authorizes a state employee to drive a state-owned vehicle to his or her home following official business when his or her home is en route to the place of employment, and when returning the vehicle to the place of employment would result in the employee working beyond a normal eight-hour day, does not violate 47 O.S. Supp.2006, § 156.1.
 8. A state agency policy that authorizes a state employee to drive a state-owned vehicle to his or her home upon completion of official state business, when returning the vehicle to the state agency or state motor pool would result in doing so after daylight hours, does not violate 47 O.S. Supp.2006, § 156.1.
W. A. DREW EDMONDSON Attorney General of Oklahoma
SANDRA D. RINEHART Senior Assistant Attorney General
[1] The Legislature amended Section 156.1 in 2007, but those amendments are not germane to your question. See 2007 Okla. Sess. Laws ch. 326, § 18.
[2] Subsections (B)(2), (3) and (4) of Section 156.1 contain a number of exceptions to allow specific employees to use a state-owned vehicle to provide transportation between the employee's residence and the assigned place of employment and between the residence and any location other than the assigned place of employment to which the employee travels in the performance of the employee's official duty. Exceptions are in place for law enforcement officers of specified state agencies as well as a "criminalist, Public Information Officer, Special Investigator or Assistant Director of the Oklahoma State Bureau of Investigation, or any employee of a district attorney who is a law enforcement officer."Id. § 156.1(B)(2). "Any employee of the Department of Public Safety who is an employee in the Driver License Examining Division or the DriverImprovement Compliance Division or a wrecker inspector/auditor of the Wrecker Services Division" as determined by the Commissioner, also constitutes an exception. 2007 Okla. Sess. Laws ch. 326, § 18(B)(3) (amending 47 O.S. Supp.2006, § 156.1(B)(3)). The statute also exempts the "Director, department heads and other essential employees of the Department of Wildlife Conservation, as authorized by the Wildlife Conservation Commission," from the general prohibition. Id. § 156.1(B)(4).
[3] We recognize, in citing these cases, that the authorities interpreting the words "`arising out of and occurring in the course of his employment' for the purpose of determining liability under the workmen's compensation laws are not controlling when . . . interpret[ing] the words `acting with the scope of employment' under the doctrine of respondeat superior" for tort liability purposes.Anderson, 695 P.2d at 527. An "employee can suffer a compensable injury under workers' compensation but not be within the scope of employment."Id. We cite these cases for illustrative purposes and offer no opinion on whether an employee who is involved in an accident while driving a state-owned vehicle to his/her residence en route to a location to which he or she is required to travel in the course of his or her employment the following day would be entitled to workers' compensation benefits or whether the employer would be liable in tort. These are ultimately a "question of fact for determination by the jury." See id. at 526.